# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,

 *Plaintiff*,

v.

$306,208.07 SEIZED FROM CHASE BANK ACCOUNT ENDING -2732 HELD IN THE NAME OF KVALDHANS CORP;

$1,174,396.54 SEIZED FROM CHASE BANK ACCOUNT ENDING -2817 HELD IN THE NAME OF MEDICAL HOME CARE INC.;

$482,708.59 SEIZED FROM TD BANK ACCOUNT ENDING -6665 HELD IN THE NAME OF MEDICAL HOME CARE INC.;

$4,731,851.48 SEIZED FROM CHASE BANK ACCOUNT ENDING -8323 HELD IN THE NAME OF ROYCE MEDICAL SUPPLY LLC;

$518,513.43 SEIZED FROM TD BANK ACCOUNT ENDING -8097 HELD IN THE NAME OF ROYCE MEDICAL SUPPLY LLC;

$321,458.23 SEIZED FROM CHASE BANK ACCOUNT ENDING -8210 HELD IN THE NAME OF G&I ORTHO SUPPLY INC.;

$8,208.44 SEIZED FROM TD BANK ACCOUNT ENDING -3617 HELD IN THE NAME OF G&I ORTHO SUPPLY INC.;

$4,879.39 SEIZED FROM TD BANK ACCOUNT ENDING -8992 HELD IN THE NAME OF MY SLEEP APNEA, LLC;

$1,139,206.35 SEIZED FROM BANK OF AMERICA ACCOUNT ENDING -4174

No.

1

HELD IN THE NAME OF MY SLEEP
APNEA, LLC;

$478,095.54 SEIZED FROM TD BANK
ACCOUNT ENDING -1833 HELD IN THE
NAME OF NEPTUNE MEDICAL AND
SURGICAL SUPPLY, INC.;

$44,644.07 SEIZED FROM BANK OF
AMERICA ACCOUNT ENDING -1520
HELD IN THE NAME OF NEPTUNE
MEDICAL AND SURGICAL SUPPLY,
INC.;

$237,808.21 SEIZED FROM TRUIST
BANK ACCOUNT ENDING -8191 HELD
IN THE NAME OF EXPRESS
HEALTHCARE INC.;

$476,994.57 SEIZED FROM CHASE BANK
ACCOUNT ENDING -0167 HELD IN THE
NAME OF EXPRESS HEALTHCARE INC.;

$915,409.03 SEIZED FROM BANK OF
AMERICA ACCOUNT ENDING -4431,
HELD IN THE NAME OF LIFELINE
MEDICAL SUPPLY, INC.;

$1,035,430.94 SEIZED FROM CHASE
BANK ACCOUNT ENDING -3751 HELD
IN THE NAME OF LIFELINE MEDICAL
SUPPLY, INC.;

$187,593.52 SEIZED FROM CITIBANK
ACCOUNT ENDING -3527, HELD IN THE
NAME OF LIFELINE MEDICAL SUPPLY,
INC.;

$254,001.10 SEIZED FROM U.S. BANK
ACCOUNT ENDING -5865 HELD IN THE
NAME OF PRETTY IN PINK BOUTIQUE
INC.;

$96,177.00 SEIZED FROM CITIZENS
BANK N.A. ACCOUNT ENDING -1117

HELD IN THE NAME OF PRETTY IN
PINK BOUTIQUE INC.;

$866,619.86 SEIZED FROM WELLS
FARGO BANK ACCOUNT ENDING -2693
HELD IN THE NAME OF PRETTY IN
PINK BOUTIQUE INC.;

$37,424.67 SEIZED FROM FLUSHING
BANK ACCOUNT ENDING -6844 HELD
IN THE NAME OF PRETTY IN PINK
BOUTIQUE INC.;

$373,618.31 SEIZED FROM REGIONS
BANK ACCOUNT ENDING -4282 HELD
IN THE NAME OF PRETTY IN PINK
BOUTIQUE INC.;

$37,185.70 SEIZED FROM CITIBANK
ACCOUNT ENDING IN -1638 HELD IN
THE NAME OF PRETTY IN PINK
BOUTIQUE INC.;

$156,113.14 SEIZED FROM CITIBANK
ACCOUNT ENDING -6431 HELD IN THE
NAME OF ZOGOL MANAGEMENT INC.;

$434,188.36 SEIZED FROM CITIBANK
ACCOUNT ENDING -7207 HELD IN THE
NAME OF WHABA MEDICAL INC.;

$1,742,843.78 SEIZED FROM
SANTANDER BANK ACCOUNT ENDING
-5819 HELD IN THE NAME OF ARGO
MEDICAL SUPPLIES & SERVICES INC.;

$984,283.83 SEIZED FROM BANK OF
AMERICA ACCOUNT ENDING -9152
HELD IN THE NAME OF ARGO
MEDICAL SUPPLIES & SERVICES INC.;

$87,194.29 SEIZED FROM CUSTOMERS
BANK ACCOUNT ENDING -6178 HELD
IN THE NAME OF M31 CAPITAL
MANAGEMENT LLC;

$582,485.40 SEIZED FROM CHASE BANK
ACCOUNT ENDING -0166 HELD IN THE
NAME OF MARAT DIAGNOSTIC
SERVICES CORP;

*Defendants*.                                  June 27, 2025

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Now comes Plaintiff, United States of America, by and through its attorneys, United States

Attorney for the District of Connecticut David X. Sullivan, Assistant U.S. Attorney David C.

Nelson, Chief of the Money Laundering and Asset Recovery Section of the Criminal Division

Margaret A. Moeser, Trial Attorney Emily Cohen, and Trial Attorney Chelsea R. Rooney, and

respectfully states that:

### INTRODUCTION

1.  This civil action *in rem* is brought pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C)

    and is governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims

    and Asset Forfeiture Actions of the Federal Rules of Civil Procedure and 18 U.S.C. §§ 981,

    983, and 984.

2.  The defendants (hereinafter the "Defendant Assets") are: $306,208.07 seized from Chase

    Bank account ending -2732 held in the name of KValdhans Corp; $1,174,396.54 seized

    from Chase Bank account ending -2817 held in the name of Medical Home Care Inc.;

    $482,708.59 seized from TD Bank account ending -6665 held in the name of Medical

    Home Care Inc.; $4,731,851.48 seized from Chase Bank account ending -8323 held in the

    name of Royce Medical Supply LLC; $518,513.43 seized from TD Bank account ending -

    8097 held in the name of Royce Medical Supply LLC; $321,458.23 seized from Chase

    Bank account ending -8210 held in the name of G&I Ortho Supply Inc.; $8,208.44 seized

4

from TD Bank account ending -3617 held in the name of G&I Ortho Supply Inc.; $4,879.39 seized from TD Bank account ending -8992 held in the name of My Sleep Apnea, LLC; $1,139,206.35 seized from Bank of America account ending -4174 held in the name of My Sleep Apnea, LLC; $478,095.54 seized from TD Bank account ending -1833 held in the name of Neptune Medical And Surgical Supply, Inc.; $44,644.07 seized from Bank of America account ending -1520 held in the name of Neptune Medical and Surgical Supply, Inc.; $237,808.21 seized from Truist Bank account ending -8191 held in the name of Express Healthcare, Inc.; $476,994.57 seized from Chase Bank account ending -0167 held in the name of Express Healthcare, Inc.; $915,409.03 seized from Bank of America account ending -4431 held in the name of Lifeline Medical Supply, Inc.; $1,035,430.94 seized from Chase Bank account ending -3751 held in the name of Lifeline Medical Supply, Inc.; $187,593.52 seized from Citibank account ending -3527 held in the name of Lifeline Medical Supply, Inc.; $254,001.10 seized from U.S. Bank account ending -5865 held in the name of Pretty in Pink Boutique Inc.; $96,177.00 seized from Citizens Bank N.A. account ending -1117 held in the name of Pretty in Pink Boutique Inc.; $866,619.86 seized from Wells Fargo Bank account ending -2693 held in the name of Pretty in Pink Boutique Inc.; $37,424.67 seized from Flushing Bank account ending -6844 held in the name of Pretty in Pink Boutique Inc.; $373,618.31 seized from Regions Bank account ending -4282 held in the name of Pretty in Pink Boutique Inc.; $37,185.70 seized from Citibank account ending -1638 held in the name of Pretty in Pink Boutique Inc.; $156,113.14 seized from Citibank account ending -6431 held in the name of Zogol Management Inc.; $434,188.36 seized from Citibank account ending -7207 held in the name of Whaba Medical Inc.; $1,742,843.78 seized from Santander Bank account ending -5819 held in the name of Argo

Medical Supplies & Services Inc.; $984,283.83 seized from Bank of America account ending -9152 held in the name of Argo Medical Supplies & Services Inc.; $87,194.29 seized from Customers Bank account ending -6178 held in the name of M31 Capital Management LLC; and $582,485.40 seized from Chase Bank account ending -0166 held in the name of Marat Diagnostic Services Corp.

3.    This action seeks the forfeiture of all right, title and interest in the Defendant Assets because the Defendant Assets: constitute or are derived from proceeds of wire fraud affecting a health care benefit program in violation of 18 U.S.C. § 1343; constitute or are derived from proceeds of health care fraud in violation of 18 U.S.C. § 1347; and are property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 or 1957 or are traceable to such property. Specifically, as detailed below, as a result of the submission of fraudulent and false medical bills to Medicare and other health insurance companies, the bank accounts described above accumulated proceeds of a health care fraud and wire fraud scheme and were involved in the laundering of such proceeds.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this action commenced by the United States of America under 28 U.S.C. § 1345 and over this action for forfeiture under 18 U.S.C. § 1355(a).

5.    This Court has venue pursuant to 28 U.S.C. §§1355(b) and 1395(b) because the Defendant Assets are located within the jurisdiction of this Court.

## FACTUAL BACKGROUND

6.    The Defendant Assets were seized by the Government as part of an ongoing investigation into a health care fraud, wire fraud, and money laundering scheme.

7.      In or about and between 2022 and the present, a transnational criminal organization (the "Organization"), based in Russia and elsewhere, orchestrated a multi-billion-dollar health care fraud and money laundering scheme (the "Scheme") to target, exploit, and steal from the Medicare Program and private health insurance companies who were contracted as Medicare Supplemental Insurers.

8.      To date, the Organization has submitted or caused the submission of over $10 billion in fraudulent Medicare claims for durable medical equipment or "DME."

9.      The Organization purchased dozens of DME companies ("Scheme DME Companies") from prior legitimate owners that already had the ability to submit claims to Medicare and Medicare Supplemental Insurers.

10.     The Organization executed these purchases by paying foreign nationals and others to serve as nominee owners of the Scheme DME Companies.

11.     The Organization created fictitious corporate records that falsely indicated that the nominee owners controlled the Scheme DME Companies when, in truth and fact, the Organization's foreign-based leadership maintained such control.

12.     After the Organization gained control over the Scheme DME Companies, it rapidly submitted billions of dollars in false and fraudulent health care claims to Medicare for DME that it did not provide.

13.     The Organization did so by misappropriating the identities of thousands of Americans, including elderly and disabled Americans, and stealing their personal identifying information.

14.     Thousands of Americans reported their concerns to Medicare and its contractor after receiving explanation of benefit forms that reflected their purportedly receiving DME that

they did not in fact receive, that was purportedly prescribed by doctors whom they had never heard of, and delivered from DME companies with which they were unfamiliar.

15. The Defendant Assets were seized pursuant to hybrid civil/criminal seizure warrants authorized by the Honorable S. Dave Vatti of the U.S. District Court for the District of Connecticut from December 6, 2023, to April 4, 2025.

16. The Defendant Assets remain in the Government's possession, custody, and control.

17. The term "specified unlawful activity," as used in 18 U.S.C. §§ 1956 and 1957, includes any act or activity constituting an offense involving a Federal health care offense. *See* 18 U.S.C. § 1956(c)(7)(F).

18. Under 18 U.S.C. § 24(a), the term "Federal health care offense" includes a violation of or criminal conspiracy to violate 18 U.S.C. § 1347 and a violation of or criminal conspiracy to violate 18 U.S.C. § 1343 if the violation or conspiracy relates to a health care benefit program.

19. This scheme impacted both Medicare and private health insurance companies, which were "health care benefit program[s]" as defined by 18 U.S.C. § 24(b).

## INFORMATION ABOUT MEDICARE AND DME

20. At all pertinent times, the Medicare program ("Medicare") was a federally funded health insurance program that provided health benefits to individuals who were 65 years of age or older or disabled. Medicare was administered by the Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS").

21. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

22. Individuals who qualified for Medicare benefits were commonly referred to as

"beneficiaries."

23.    Each beneficiary was given a unique Medicare identification number.

24.    Medicare covered different types of benefits, which were separated into different program "parts."

25.    Medicare Part B covered medically necessary physician services and outpatient care, including DME, such as prosthetics, orthotics, glucose monitors, urinary catheters, and braces.

26.    DME companies, physicians, and other health care providers (collectively, "providers") that provided items or services to beneficiaries were able to apply for and obtain a National Provider Identifier ("NPI").

27.    To participate in Medicare, providers were required to submit an enrollment application.

28.    As provided in the application, every provider was required to meet certain standards to obtain and retain billing privileges with Medicare, including: (a) provide complete and accurate information on the application, with any changes to the information on the application reported within 30 days; (b) disclose persons and/or organizations with ownership interests or managing control; (c) abide by applicable Medicare laws, regulations, and program instructions; (d) acknowledge that the payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions; and (e) refrain from knowingly presenting or causing another to present a false or fraudulent claim for payment by Medicare and submitting claims with deliberate ignorance or reckless disregard of their truth or falsity.

29.    Providers were provided with online access to Medicare manuals and service bulletins

describing proper billing procedures and billing rules and regulations.

30.     Upon a change in ownership for an enrolled Medicare provider, the provider was required to re-submit an enrollment application setting forth details of the new ownership, including the names of all owners and managing employees, contact information, and a certification by any new individuals that they would abide by Medicare rules and regulations.

31.     The enrollment application was required to be approved by Medicare before the provider could be reimbursed for claims following a change in ownership.

32.     If Medicare approved the application, Medicare assigned the provider a Medicare Provider Identification Number ("PIN" or "provider number").

33.     Providers assigned a Medicare PIN to render services to beneficiaries could submit claims for reimbursement to Medicare that included the PIN assigned to that provider. Payments under Medicare were often made directly to the provider rather than to a Medicare beneficiary.

34.     This payment occurred when providers submitted the claim to Medicare for payment, either directly or through a billing company.

35.     CMS contracted with various companies to receive, adjudicate, process, and pay Medicare Part B claims, including claims for DME.

36.     Under Medicare Part B, DME was required to be reasonable and medically necessary for the treatment or diagnosis of the patient's illness or injury, ordered by a medical professional, properly documented, and provided as represented to Medicare.

37.     Medicare used the term "ordering/referring" provider to identify the physician or nurse practitioner who ordered, referred, or certified an item or service reported in that claim. Individuals who ordered, referred, or certified these items or services were required to have

the appropriate training, qualifications, and licenses.

38.    A Medicare claim was required to set forth, among other things, the beneficiary's name, the date the items or services were provided, the cost of the items or services, the name and identification number of the physician or other health care provider who ordered the items or services, and the name and identification number of the provider who provided the items or services.

39.    Providers conveyed this information to Medicare by submitting claims using billing codes and coding modifiers, which provided additional information about the medical procedure, service, or supply involved.

40.    Medicare regulations required providers to maintain complete and accurate patient medical records reflecting the medical assessments and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom items or services were provided and for whom claims for payment were submitted.

41.    Medicare required complete and accurate patient records so that Medicare could verify that the items or services were provided as described on the claim form and so that Medicare could review the appropriateness of payments made to providers.

42.    Medicare Advantage (also known as "Part C") was a Medicare-approved plan from a private company that offers an alternative to original Medicare for health coverage.

43.    Medigap, also known as Medicare Supplemental Insurance, helped fill "gaps" in Medicare coverage and was sold by private health insurance companies.

44.    Medigap was a health care benefit program under Title 18 United States Code, Section 24(b).

45.    A Medigap plan could help pay some of the remaining health care costs not covered by Medicare, such as copayments, coinsurance, and deductibles.

46.    For DME claims, a Medigap plan generally covered approximately 20 percent of the claim amount.

47.    Medicare Supplemental Insurers were contractually obligated to reimburse claims that had been processed by Medicare, even if Medicare subsequently suspended payment of the claims.

### INFORMATION REGARDING THE DME BUSINESSES AND THE ASSOCIATED DEFENDANT ASSETS

### KVALDHANS CORP

48.    KValdhans Corp is/was a business created by Kevin Valdhans ("Valdhans") and was registered on November 22, 2022, in Delaware.

49.    Valdhans, a Czech citizen and member of the Organization, entered the United States on January 8, 2023, to serve as the nominee owner of three DME Companies and to execute the Organization's money laundering conspiracy until he left the United States on March 24, 2023.

50.    While in the United States, Valdhans purchased three DME companies: Medical Home Care Inc. ("Medical Home Care"), Royce Medical Supply LLC, and G&I Ortho Supply Inc. ("G&I Ortho").

51.    As set forth more fully in this complaint, Medical Home Care, Royce Medical Supply LLC, and G&I Ortho submitted fraudulent medical bills to Medicare via interstate wires.

### *KValdhans Corp: Chase Bank account ending -2732*

52.    On January 10, 2023, Valdhans opened Chase Bank account ending -2732 held in the name of KValdhans Corp, with Valdhans as the sole signatory on the account.

53.    This account was initially funded with a $1,000.00 cash deposit.

54.    After Valdhans opened Chase Bank account ending -2732 but before he purchased any of the businesses mentioned previously, the account received four wire transfers from accounts in Hong Kong totaling $124,900.00.

55.    Chase Bank account ending -2732 held in the name of KValdhans Corp also received a domestic wire transfer in the amount of $81,000.00.

56.    On May 11, 2023, Valdhans logged into his Chase Bank account via a virtual private server ("VPS").

57.    The VPS allowed Valdhans, and other members of the Organization, to use a cyberinfrastructure that helped conceal conspirators' true physical locations, mask Organization IP addresses, and scale fraudulent operations internationally.

58.    Chase Bank account ending -2732 held in the name of KValdhans Corp also received proceeds from the fraud perpetrated by Medical Home Care, Royce Medical Supply LLC, and G&I Ortho.

59.    On April 6 and April 7, 2023, Chase Bank account ending -8210 held in the name of G&I Ortho Supply Inc. received $2,598,900.31 from Medicare.

60.    On April 18, 26, and 27, 2023, Chase Bank account ending -8210 held in the name of G&I Ortho Supply Inc. sent a total of $484,500.00 to Chase Bank account ending -2732 held in the name of KValdhans Corp.

61.    On May 3 and May 8, 2023, Chase Bank account ending -2817 held in the name of Medical Home Care Inc., received a total of $1,784,170.06 in reimbursements from Medicare.

62.    On May 8 and May 9, 2023, Chase Bank account ending -2817 held in the name of Medical Home Care Inc. transferred $58,000.00 to Chase Bank account ending -2732 held in the name of KValdhans Corp in amounts exceeding $10,000.00.

63.    On May 3 and May 9, 2023, Chase Bank account ending -8323 held in the name of Royce Medical Supply LLC received $5,458,716.16 from Medicare.

64.    Between May 8 and May 10, 2023, Chase Bank account ending -8323 held in the name of Royce Medical Supply LLC transferred a total of $242,800.00 to Chase Bank account ending -2732 held in the name of KValdhans Corp in amounts exceeding $10,000.00.

65.    On December 6, 2023, the Government seized the remaining balance in Chase Account ending in -2732 held in the name of KValdhans Corp, consisting of approximately $306,208.07 in health care and wire fraud proceeds.

66.    The Government seeks forfeiture of the approximately $306,208.07 seized from Chase Bank account ending -2732 held in the name of KValdhans Corp because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1956 and 18 U.S.C. § 1957.

## MEDICAL HOME CARE

67.    At all pertinent times, Medical Home Care was a company founded in Bethel, Connecticut.

68.    Medical Home Care was sold to Valdhans on March 17, 2023 for $400,000.00.

69.    After the sale of Medical Home Care to Valdhans, Medical Home Care submitted via interstate wire $7,023,679.86 in Medicare claims between March and May of 2023.

70.    Medicare reimbursed Medical Home Care $1,784,170.06 on the claims transmitted between March and May of 2023.

71.    Medical Home Care's Medicare claims between March and May of 2023 consisted almost entirely of claims for DME.

72.    Medical Home Care's claims for reimbursement to Medicare during this time were false; Medical Home Care did not provide DME to patients.

### *Medical Home Care: Chase Bank account ending -2817*

73.    Medical Home Care Inc. had a Chase Bank account ending -2817.

74.    After his purchase of Medical Home Care, Valdhans became the sole signatory on the Chase Bank account ending -2817 held in the name of Medical Home Care Inc.

75.    From April 18, 2023 to May 2, 2023, Valdhans funded Chase Bank account ending -2817 held in the name of Medical Home Care Inc. with four transfers from Chase Bank account ending -2732 held in the name of KValdhans Corp (which contained health care and wire fraud proceeds, as discussed above), totaling approximately $15,000.00.

76.    On May 3 and May 8, 2023, Chase Bank account ending -2817 held in the name of Medical Home Care Inc. received a total of approximately $1,784,170.06 from Medicare, including at least one check exceeding $10,000.00.

77.    On May 8 and May 9, 2023, Chase Bank account ending -2817 held in the name of Medical Home Care Inc. sent a total of approximately $58,000.00 back to Chase Bank account ending -2732 held in the name of KValdhans Corp.

78.    Between May 8 and May 11, 2023, Valdhans or others on his behalf sent approximately $511,190.00 from Chase Bank account ending -2817 held in the name of Medical Home Care Inc. to China-based financial institutions.

79. On May 4, 2023, Valdhans sent approximately $37,950.00 from Chase Bank account ending -2817 held in the name of Medical Home Care Inc. to a Malaysia-based financial institution.

80. On December 6, 2023, the Government seized the remaining balance in Chase Bank account ending in -2817, held in the name of Medical Home Care Inc., consisting of approximately $1,174,396.54 in health care and wire fraud proceeds.

81. The Government seeks forfeiture of the approximately $1,174,396.54 seized from Chase Bank account ending -2817 held in the name of Medical Home Care Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1956 and 18 U.S.C. § 1957.

*Medical Home Care: TD Bank account ending -6665*

82. TD Bank Business Convenience Plus Checking account ending -6665 held in the name of Medical Home Care Inc. was opened on March 20, 2023.

83. Between March 20, 2023, and December 13, 2023, Medical Home Care submitted fraudulent claims for reimbursement to Medicare via interstate wire totaling $152,387,051.00. Certain beneficiaries on behalf of whom claims were submitted held secondary policies through Medigap or another private supplemental insurance company, resulting in secondary claims being processed by those private health insurance companies.

84. From approximately March to September 2023, TD Bank account ending -6665 held in the name of Medical Home Care Inc. received approximately $2,069,486.32 from private health insurance companies stemming from the fraudulently submitted Medicare claims.

85.     On June 8, 2023, TD Bank account ending -6665 held in the name of Medical Home Care Inc. received a $116,274.90 check deposit from TRICARE stemming from the fraudulently submitted Medicare claims.

86.     At all pertinent times, TRICARE was the health care program that covered United States uniformed service members and was managed by the Defense Health Agency.

87.     From July 20, 2023 to August 11, 2023, TD Bank account ending -6665 held in the name of Medical Home Care Inc. also sent five checks totaling approximately $702,000.00 to Ulysses HK Co., Limited, which was an entity incorporated in Hong Kong and owned by a Chinese national.

88.     On March 1, 2024, the Government seized the remaining balance in TD Bank account ending -6665 held in the name of Medical Home Care Inc., consisting of approximately $482,708.59 in health care and wire fraud proceeds.

89.     The Government seeks forfeiture of the approximately $482,708.59 seized from TD Bank account ending -6665 held in the name of Medical Home Care Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1957.

## ROYCE MEDICAL SUPPLY LLC

90.     At all pertinent times, Royce Medical Supply LLC ("Royce") was a Florida-based company.

91.     Royce was sold to Valdhans in March of 2023 for approximately $103,580.00.

92.     Between March and May of 2023, Valdhans submitted Medicare claims via interstate wire on behalf of Royce in the amount of approximately $10,748,490.00.

93.     Medicare paid approximately $5,458,716.16 to Royce pursuant to these claims for DME.

94.    Royce's claims for reimbursement submitted to Medicare via interstate wire during this time were false; Royce did not provide DME to patients.

### *Royce Medical Supply: Chase Bank account ending -8323*

95.    Chase Bank account ending -8323 held in the name of Royce Medical Supply LLC was opened on February 25, 2023.

96.    On March 22, 2023, Valdhans took control as the account's sole signatory.

97.    From March 24, 2023 to April 19, 2023, Valdhans transferred $21,000.00 from Chase Bank account ending -2732 held in the name of KValdhans Corp to Chase Bank account ending -8323 held in the name of Royce Medical Supply LLC.

98.    On May 3 and May 9, 2023, Chase Bank account ending -8323 held in the name of Royce Medical Supply LLC received approximately $5,458,716.16 from Medicare, including at least one check exceeding $10,000.00.

99.    Between May 8 and May 10, 2023, Chase Bank account ending -8323 held in the name of Royce Medical Supply LLC sent a total of approximately $242,800.00 to Chase Bank account ending -2732 held in the name of KValdhans Corp.

100.    Between May 5 and May 10, 2023, Chase Bank account ending -8323 held in the name of Royce Medical Supply LLC sent five international wire transfers to China-based financial institutions totaling approximately $554,100.00. Similarly, on May 4, 2023, Chase Bank account ending -8323 held in the name of Royce Medical Supply LLC, sent approximately $41,600.00 to a Malaysia-based financial institution.

101.    On December 6, 2023, the Government seized the remaining balance in Chase Bank account ending -8323 held in the name of Royce Medical Supply LLC, consisting of approximately $4,731,851.48 in health care and wire fraud proceeds.

102.  The Government seeks forfeiture of the approximately $4,731,851.48 seized from Chase Bank account ending -8323 held in the name of Royce Medical Supply LLC because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1956 and 18 U.S.C. § 1957.

### *Royce Medical Supply LLC: TD Bank account ending in -8097*

103.  TD Bank account ending in -8097 held in the name of Royce Medical Supply LLC was opened on June 1, 2023.

104.  Between June 1, 2023, and December 13, 2023, Royce billed $262,106,161.00 in fraudulent Medicare submissions via interstate wire.

105.  From June 1, 2023 to November 30, 2023, TD Bank account ending in -8097 held in the name of Royce Medical Supply received approximately $716,154.28 from Medigap or other private health insurance companies stemming from fraudulently submitted Medicare bills, including several checks in amounts exceeding $10,000.00.

106.  In June 2023, TD Bank account ending in -8097 held in the name of Royce Medical Supply sent two wires totaling $102,060.00 to RKT Industry Ltd, which was a company based in Hong Kong.

107.  In total, in June 2023, TD Bank account ending in -8097 held in the name of Royce Medical Supply LLC transferred $51,125.00 to other DME companies and entities involved in this scheme. Other than a few bank adjustments/maintenance fees, there was no activity in the account after June 2023.

108.  On March 1, 2024, the Government seized the remaining balance in TD Bank account ending in -8097 held in the name of Royce Medical Supply, consisting of approximately $518,513.43 in health care and wire fraud proceeds.

109.   The Government seeks forfeiture of the approximately $518,513.43 seized from TD Bank account ending in -8097 held in the name of Royce Medical Supply LLC because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1957.

## G&I ORTHO SUPPLY INC.

110.   At all pertinent times, G&I Ortho was a DME supply company incorporated in the State of New York.

111.   Valdhans, through KValdhans Corp, purchased G&I Ortho on March 3, 2023, for $400,000.00.

112.   Between March and May of 2023, G&I Ortho submitted approximately $11,480,082.00 in claims to Medicare via interstate wire.

113.   Medicare, in turn, paid G&I Ortho approximately $2,599,404.71 for those claims.

114.   During the time of Valdhans' ownership of G&I Ortho, G&I Ortho's claims for reimbursement submitted to Medicare via interstate wire were false; G&I Ortho did not provide DME to patients.

### *G&I Ortho: Chase Bank account ending -8210*

115.   Chase Bank account ending -8210 held in the name of G&I Ortho Supply Inc. was opened in 2021.

116.   On March 6, 2023, after purchasing G&I Ortho, Valdhans became the sole signatory on the account.

117.   On April 6 and April 7, 2023, Chase Bank account ending -8210 held in the name of G&I Ortho received approximately $2,599,404.71 from Medicare, including more than one check in an amount exceeding $10,000.00.

118.    On April 18, 26, and 27, 2023, Chase Bank account ending -8210 held in the name of G&I Ortho sent a total of approximately $484,500.00 to Chase Bank account ending -2732 held in the name of KValdhans Corp.

119.    Between May 5 and May 11, 2023, Chase Bank account ending -8210 held in the name of G&I Ortho sent three international wire transfers to a Hong Kong-based financial institution totaling approximately $131,500.00.

120.    Between April 6 and May 1, 2023, Chase Bank account ending -8210 held in the name of G&I Ortho sent 17 international wire transfers to a Malaysia-based financial institution totaling approximately $2,141,400.00.

121.    On December 6, 2023, the Government seized the remaining balance in Chase Bank account ending -8210 held in the name of G&I Ortho Supply Inc., consisting of approximately $321,458.23 in health care and wire fraud proceeds.

122.    The Government seeks forfeiture of the approximately $321,458.23 seized from Chase Bank account ending -8210 held in the name of G&I Ortho Supply Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1956 and 18 U.S.C. § 1957.

### G&I Ortho: TD Bank account ending -3617

123.    On March 7, 2023, Valdhans opened TD Bank account ending -3617 held in the name of G&I Ortho Supply Inc.

124.    Between March 7, 2023, and December 13, 2023, G&I Ortho billed $289,148,961.00 in fraudulent Medicare submissions.

125.    Of this amount, TD Bank account ending -3617 held in the name of G&I Ortho Supply Inc. received approximately $2,484,692.20 from Medigap or other private health insurance

companies stemming from fraudulently submitted Medicare bills, including multiple checks in amounts exceeding $10,000.00.

126.    A significant amount of this money was returned to the insurance companies, leaving a total of $688,372.55 from private health insurance companies that was actually deposited into the account.

127.    TD Bank account ending -3617 held in the name of G&I Ortho Supply Inc. transferred money to TD Bank account ending -8097, held by Royce.

128.    On March 1, 2024, the Government seized the remaining balance in TD Bank account ending -3617 held in the name of G&I Ortho Supply, consisting of approximately $8,208.44 in health care and wire fraud proceeds.

129.    The Government seeks forfeiture of the approximately $8,208.44 seized from TD Bank account ending -3617 held in the name of G&I Ortho Supply Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1956 and 18 U.S.C. § 1957.

## MY SLEEP APNEA, LLC

130.    My Sleep Apnea, LLC ("My Sleep Apnea"), formed in 2012.

131.    At all pertinent times, My Sleep Apnea was located in Collier County, Florida, operated as a DME provider, and approved by Medicare to supply medically necessary DME to Medicare beneficiaries.

132.    On or about June 6, 2023, My Sleep Apnea was sold to Jurgens Corporation for a purchase price of $300,000.00, with Jaan Juergens ("Juergens"), a member of the Organization, executing the Agreement for Purchase and Sale of Membership Interests on behalf of Jurgens Corporation.

133. On or about June 13, 2023, Articles of Amendment to My Sleep Apnea's Articles of Organization were filed with the Florida Department of State, Division of Corporations, listing Juergens as Manager.

134. A limited liability company operating agreement dated May 25, 2023, lists Juergens as having 100 percent ownership of My Sleep Apnea.

135. Following the sale to Juergens, between June 6, 2023, and February 9, 2024, My Sleep Apnea submitted claims to Medicare via interstate wire for DME in the amount of approximately $605,925,200.00.

136. This represented a large spike in billing compared to the historical business of My Sleep Apnea.

137. My Sleep Apnea's claims for reimbursement submitted to Medicare via interstate wire during this time were false; My Sleep Apnea did not provide DME to patients.

138. My Sleep Apnea's Medicare billing records indicated that My Sleep Apnea billed for items from June 6, 2023, through February 9, 2024, related to approximately 191 beneficiaries who had been deceased for 30 or more days.

139. Law enforcement's review of My Sleep Apnea's financial records revealed financial activity inconsistent with the running of a large-scale DME business. For example, a detailed review was unable to conclusively identify a large and consistent stream of expenses tied to business activities typically expected with the operation of a DME business, such as a large volume of catheter purchases, shipping and packaging fees, and/or storage fees. Furthermore, most of the funds that flowed into the My Sleep Apnea bank accounts were then quickly withdrawn, with some funds being sent to foreign bank accounts, including to accounts in China.

### *My Sleep Apnea, LLC: TD Bank account ending -8992*

140.    On or about June 22, 2023, Juergens opened TD Bank account ending -8992 in the name of My Sleep Apnea, LLC.

141.    On June 22, 2023, TD Bank account ending -8992 held in the name of My Sleep Apnea was funded with a $5,000.00 deposit from TD Bank account ending -8097, which was associated with Royce Medical Supply LLC.

142.    Other than two debit card purchases and several account maintenance fees, there was no further activity in the account.

143.    On March 1, 2024, the Government seized the remaining balance in TD Bank account ending -8992 held in the name of My Sleep Apnea, consisting of approximately $4,879.39 in health care and wire fraud proceeds.

144.    The Government seeks forfeiture of the approximately $4,879.39 seized from TD Bank account ending -8992 held in the name of My Sleep Apnea because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in a violation of 18 U.S.C. § 1956.

### *My Sleep Apnea, LLC: Bank of America account ending -4174*

145.    On August 7, 2023, Bank of America account ending -4174 held in the name of My Sleep Apnea, LLC was opened with a $500 counter credit.

146.    On August 9, 2023, a check from Medicare in the amount of $155,818.41 consisting of health care and wire fraud proceeds was deposited into Bank of America account ending -4174 held in the name of My Sleep Apnea.

147.    On August 28, 2023, a check from Medicare in the amount of $982,701.94 consisting of health care and wire fraud proceeds was deposited into Bank of America account ending -4174 held in the name of My Sleep Apnea.

148.    Also on August 28, 2023, Bank of America account ending -4174 held in the name of My Sleep Apnea received a $700 deposit from an account believed to be proceeds from a personal account of Juergens', as this personal account received online banking transfers from August 15 to August 21, 2023 totaling $1,400.00 from Bank of America account ending -1520, held in the name of Neptune Medical and Surgical Supply, Inc.

149.    Account activity ceased after September 7, 2023.

150.    On May 21, 2024, the Government seized the remaining balance in Bank of America account ending -4174 held in the name of My Sleep Apnea, consisting of approximately $1,139,206.35 in health care and wire fraud proceeds.

151.    The Government seeks forfeiture of the approximately $1,139,206.35 seized from Bank of America account ending -4174 held in the name of My Sleep Apnea because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1957.

## NEPTUNE MEDICAL AND SURGICAL SUPPLY, INC.

152.    Neptune Medical and Surgical Supply, Inc. ("Neptune"), formed in 2008 and located in Kings County, New York, operated as a DME provider and was approved by Medicare to supply medically necessary DME to Medicare beneficiaries.

153.    On or about April 28, 2023, Neptune was sold to Jurgens Corporation for a purchase price of approximately $460,000.00, which was paid for via wires from KValdhans Corp.

154.    Juergens executed the Agreement for Purchase and Sale of Stock on behalf of Jurgens Corporation.

155.    Between May 3, 2023, and February 9, 2024, following the sale to Juergens, Neptune submitted claims to Medicare via interstate wire for DME in the amount of approximately $781,735,230.60.

156.    Neptune's claims for reimbursement submitted to Medicare via interstate wire in the time following the sale of Neptune to Juergens were false; Neptune did not provide DME to patients.

### *Neptune Medical and Surgical Supply, Inc.: TD Bank account ending -1833*

157.    Juergens opened TD Bank account ending -1833 held in the name of Neptune Medical and Surgical Supply, Inc. on or about May 18, 2023.

158.    Between May 18, 2023, and January 5, 2024, TD Bank account ending -1833 held in the name of Neptune received approximately $627,708.07 from private health insurance companies, including one reimbursement check from Blue Cross Blue Shield of North Carolina in the amount of $477,783.85.

159.    The payments from various health insurance companies were directly related to the fraudulent billing that was initiated with Medicare.

160.    Between June 6, 2023, and June 26, 2023, TD Bank account ending -1833 held in the name of Neptune received four round-dollar deposits of fraud proceeds from TD Bank account ending in -8097, held in the name of Royce, totaling $28,000.00.

161.    On June 8, 2023, TD Bank account ending -1833 held in the name of Neptune received a $1,600.00 deposit of proceeds from an account held by Jurgens Corporation.

162.    On May 21, 2024, the Government seized the remaining balance in TD Bank account ending -1833 held in the name of Neptune Medical and Surgical Supply, Inc., consisting of approximately $478,095.54 in health care and wire fraud proceeds.

163.    The Government seeks forfeiture of the approximately $478,095.54 seized from TD Bank account ending -1833 held in the name of Neptune Medical and Surgical Supply, Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1956 and 18 U.S.C. § 1957.

### *Neptune Medical and Surgical Supply, Inc.:*
### *Bank of America account ending -1520*

164.    Juergens opened Bank of America account ending -1520 held in the name of Neptune Medical and Surgical Supply, Inc. on or about July 28, 2023.

165.    Between August 1, 2023, and August 10, 2023, Bank of America account ending -1520 held in the name of Neptune received deposits from private health insurance companies totaling approximately $76,776.41, including checks in amounts exceeding $10,000.00.

166.    The payments from various health insurance companies were directly related to the fraudulent billing that was initiated with Medicare.

167.    On May 21, 2024, the Government seized the remaining balance in Bank of America account ending -1520 held in the name of Neptune Medical and Surgical Supply, Inc., consisting of approximately $44,644.07 in health care and wire fraud proceeds.

168.    The Government seeks forfeiture of the approximately $44,644.07 seized from Bank of America account ending -1520 held in the name of Neptune Medical and Surgical Supply, Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1957.

## EXPRESS HEALTHCARE, INC.

169.   Jason Onoufrienko ("Onoufrienko"), an American citizen and member of the Organization, served as the nominee owner of two Scheme DME Companies and executed the Organization's money laundering conspiracy, from in or around December 2023 until he fled the United States in or around April 2024.

170.   At certain times, Onoufrienko controlled the DME company, Express Healthcare, Inc. ("Express").

171.   On or about February 2, 2024, Onoufrienko purchased Express for a purchase price of approximately $450,000.00.

172.   On or about January 16, 2024, Express began submitting a significant and unusual volume of claims to Medicare via interstate wire for DME. From approximately January 2024 through April 4, 2024, Express submitted claims via interstate wire totaling approximately $731,193,00.00 to Medicare for DME; nearly all these claims were held in suspense and not paid due to suspected fraud.

173.   Express's claims for reimbursement submitted to Medicare and other entities via interstate wire during this time were false; Express did not provide DME to patients.

### *Express Healthcare, Inc.: Truist Bank account ending -8191*

174.   On February 21, 2024, Onoufrienko opened Truist Bank account ending -8191, held in the name of Express Healthcare Inc. Onoufrienko was listed as the sole signatory on this account.

175.   Truist Bank account ending -8191 held in the name of Express Healthcare Inc. almost exclusively received reimbursement checks, several of which exceeding $10,000.00, from various Medigap insurers or other private health insurance companies. Such checks consisted of health care and wire fraud proceeds.

176. For example, on April 23, 2024, two checks totaling $1,563,884.23 from Blue Cross Blue Shield of Illinois were deposited into Truist Bank account ending -8191 held in the name of Express Healthcare Inc. Such checks consisted of health care and wire fraud proceeds.

177. On May 2 and May 9, 2024, two checks totaling $350,000.00 were transferred from Truist Bank account ending -8191 held in the name of Express Healthcare Inc. to Chase Bank account ending -0167, also held by Express, described below.

178. On October 23, 2024, the Government seized the remaining balance in Truist Bank account ending -8191 held in the name of Express Healthcare Inc, consisting of approximately $237,808.21 in health care and wire fraud proceeds.

179. The Government seeks forfeiture of the approximately $237,808.21 seized from Truist Bank account ending -8191 held in the name of Express Healthcare Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1957.

### *Express Healthcare, Inc.: Chase Bank account ending -0167*

180. On February 16, 2024, Onoufrienko opened Chase Bank account ending -0167, held in the name of Express Healthcare Inc.

181. Onoufrienko was listed as the sole signatory on this account.

182. Between April 29, 2024, and May 24, 2024, Chase Bank account ending -0167 held in the name of Express Healthcare, Inc. received a total of $1,608,000.00 in proceeds laundered from various accounts held in the name of Express.

183. The underlying Express bank accounts that funded Chase Bank account ending -0167 held in the name of Express received numerous checks from various private health insurance

companies stemming from Express's submission of fraudulent health care claims via interstate to Medicare.

184.    For example, in May 2024, Express's Centennial Bank account—on which Onoufrienko was the sole signatory—received a total of $219,388.00 in checks from Blue Cross and Blue Shield of Oklahoma and a total of $144,780.00 in checks from Cigna Health and Life Insurance Company.  Express's Centennial Bank account then sent a total of $210,000.00 to Chase Bank account ending -0167 held in the name of Express.

185.    Similarly, in April and May 2024, Express's Century Bank account received a total of $1,170,494.00 in reimbursements from private health insurance companies based on fraudulent Medicare claims. Express's Century Bank account then sent a total of $595,000.00 to Chase Bank account ending -0167 held in the name of Express.

186.    On October 23, 2024, the Government seized the remaining balance in Chase Bank account ending -0167 held in the name of Express Healthcare, Inc., consisting of approximately $476,994.57 in health care and wire fraud proceeds.

187.    The Government seeks forfeiture of the approximately $476,994.57 seized from Chase Bank account ending -0167 held in the name of Express Healthcare, Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1956 and 18 U.S.C. § 1957.

### LIFELINE MEDICAL SUPPLY, INC.

188.    Lifeline Medical Supply, Inc. ("Lifeline"), a Florida corporation located at 1915 NE 45th Street, Suite 206, Fort Lauderdale, Florida.

189.    Lifeline was an approved DME provider with Medicare and other health care benefit programs at all relevant times.

190.    On March 8, 2024, a nominee owner ("Owner-1"), a United States resident, purchased Lifeline.

191.    On March 12, 2024, documents were submitted to the Florida Department of State, Division of Corporations, documenting changes to the President, Secretary, Treasurer, and Director of Lifeline.

192.    A review of Medicare claims data revealed that between on or about March 15, 2024, through on or about March 18, 2024, Lifeline submitted claims to Medicare via interstate wire totaling approximately $266,119,930 for DME purportedly dispensed between on or about May 1, 2023, through on or about March 15, 2024.

193.    Medicare immediately suspended payments to Lifeline upon discovery of its claims submitted in March 2024 and before any claim reimbursements to Lifeline were ever paid.

194.    However, Medigap insurers and other health care benefit programs, including TRICARE, processed these fraudulent claims and reimbursed Lifeline a total of $3,991,945.81.

195.    Lifeline's claims for reimbursement submitted to Medicare and other entities via interstate wire during this time were false; Lifeline did not provide DME to patients.

### *Lifeline Medical Supply, Inc.: Bank of America account ending -4431*

196.    On March 21, 2024, Owner-1 became the sole signatory on Bank of America account ending -4431 held in the name of Lifeline Medical Supply, Inc.

197.    In April 2024, a total of 24 checks consisting of fraud proceeds and totaling $909,672.23, including checks in amounts exceeding $10,000.00, were deposited in Bank of America account ending -4431 held in the name of Lifeline.

198. On April 16, 2024, Bank of America account ending -4431 held in the name of Lifeline received a $10,000.00 wire consisting of fraud proceeds from Citibank account ending -3527, also held in the name of Lifeline.

199. On July 18, 2024, the Government seized the remaining balance in Bank of America account ending -4431 held in the name of Lifeline Medical Supply, Inc., consisting of approximately $915,409.03 in health care and wire fraud proceeds.

200. The Government seeks forfeiture of the approximately $915,409.03 seized from Bank of America account ending -4431 held in the name of Lifeline Medical Supply, Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in a violation of 18 U.S.C. § 1956 and 18 U.S.C. § 1957.

*Lifeline Medical Supply, Inc.: Chase Bank account ending -3751*

201. On March 26, 2024, Owner-1 opened and became the sole signatory on Chase Bank account ending -3751 held in the name of Lifeline Medical Supply, Inc.

202. On March 26, 2024, Owner-1 made an initial deposit of $1,000 in cash to Chase Bank account ending -3751 held in the name of Lifeline Medical Supply, Inc.

203. On April 3, 2024, Owner-1 made a cash deposit of $5,000.00.

204. On or about April 5, 2024, a check issued by a Blue Cross Blue Shield of Illinois in the amount of $1,030,077.94 was deposited into Chase Bank account ending -3751 held in the name of Lifeline Medical Supply, Inc. with sole signatory and nominee owner, Owner-1, pursuant to Lifeline's fraudulent Medicare claims.

205. From April 3 to April 5, 2024, Chase Bank account ending -3751 held in the name of Lifeline Medical Supply, Inc. sent money through the electronic payment application Zelle, totaling $617, to a purported employee of Lifeline.

206.    On July 18, 2024, the Government seized the remaining balance in Chase Bank account ending -3751 held in the name of Lifeline Medical Supply, Inc., consisting of approximately $1,035,430.94 in health care and wire fraud proceeds.

207.    The Government seeks forfeiture of the approximately $1,035,430.94 seized from Chase Bank account ending -3751 held in the name of Lifeline Medical Supply, Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations 18 U.S.C. § 1956 and 18 U.S.C. § 1957.

*Lifeline Medical Supply, Inc.: Citibank account ending -3527*

208.    On March 26, 2024, Owner-1 became the sole signatory on Citibank account ending -3527 held in the name of Lifeline Medical Supply, Inc.

209.    From April 9 to April 19, 2024, a total of 29 checks from private health insurance companies totaling $694,358.80, including checks in amounts exceeding $10,000.00, were deposited into Citibank account ending -3527 held in the name of Lifeline with sole signatory and nominee owner, Owner-1, pursuant to Lifeline's submission of fraudulent claims to Medicare via interstate wire.

210.    From April 17 to April 19, 2024, Citibank account ending -3527 held in the name of Lifeline sent three wire transfers totaling $238,350.00 to an account held by an unknown entity that law enforcement believes was based in Hong Kong, China.

211.    On July 18, 2024, the Government seized the remaining balance in Citibank account ending -3527 held in the name of Lifeline Medical Supply, Inc., consisting of approximately $187,593.52 in health care and wire fraud proceeds.

212.    The Government seeks forfeiture of the approximately $187,593.52 seized from Citibank account ending -3527 held in the name of Lifeline Medical Supply, Inc. because they

constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations 18 U.S.C. § 1956 and 18 U.S.C. § 1957.

## PRETTY IN PINK BOUTIQUE INC.

213. Pretty in Pink Boutique, Inc. ("Pretty in Pink") was formed on or about July 1, 2020 in El Paso, Texas.

214. Pretty in Pink operated as a DME supply company providing prosthetics for mastectomy patients.

215. Pretty in Pink was an approved DME provider with Medicare.

216. On July 6, 2023, Pretty in Pink was sold to Vjatseslav Zogolev ("Zogolev") for a purchase price of approximately $200,000.

217. Zogolev, an Estonian citizen and member of the Organization, entered the United States on May 27, 2023, to serve as the nominee owner of one Scheme DME Company and to execute the Organization's money laundering conspiracy until he left the United States on July 28, 2023.

218. In July 2023, Zogolev sold Pretty in Pink to Renek Tiku ("Tiku") for a purchase price of approximately $200,000.

219. Tiku, an Estonian citizen and member of the Organization, entered the United States on July 22, 2023, to serve as the nominee owner of two Scheme DME Companies and to execute the Organization's money laundering conspiracy, all the while residing in Kings County, New York, until he left the United States on December 21, 2023.

220. On November 21, 2023, a nominee owner ("Owner-2") replaced Tiku as the owner of Pretty in Pink.

221. On August 1, 2023, Pretty in Pink billed Medicare for approximately $15 million for DME.

222. On August 9, 2023, Pretty in Pink billed Medicare for approximately $43 million for DME.

223. Pretty in Pink's claims for reimbursement submitted to Medicare and other entities via interstate wire during this time were false; Pretty in Pink did not provide DME to patients.

224. From August 15, 2023, to March 29, 2024, Pretty in Pink submitted 4,229 claims via interstate wire for over 4 million DME units for 3,619 beneficiaries for which Blue Cross Blue Shield Illinois ("BCBSIL"), a Medicare supplemental insurance company paid Pretty in Pink $6.1 million.

225. BCBSIL actually paid Pretty in Pink $2,363,079.48 before it initiated an investigation.

226. On August 11, 2023, Tiku opened an account in the name of Pretty in Pink at Bank of Texas, in El Paso, Texas.

227. A review of the Bank of Texas records for this Pretty in Pink account showed that from August 24, 2023, to October 26, 2023, $104,505.00 was deposited to the account. Of these deposits, $103,505 were checks from private health insurance companies, such as Anthem Blue Cross Blue Shield.

228. The checks deposited into the account in the name of Pretty in Pink at Bank of Texas, in El Paso, Texas, represented proceeds from fraudulently billed Medicare supplemental claims.

### *Pretty In Pink: U.S. Bank account ending -5865*

229. On December 1, 2023, Owner-2 opened an account at PNC Bank in the name of Pretty in Pink Boutique Inc.

230. This account received six deposits in the month of December 2023 consisting of insurance claim checks payable to Pretty in Pink totaling $90,020.00. Such checks consisted of health care and wire fraud proceeds. No other deposits were made to the account.

231.   PNC Bank ended the relationship by closing the account with a $79,475.27 cashier's check on January 23, 2024.

232.   On January 19, 2024, Owner-2 opened the U.S. Bank account ending -5865 held in the name of Pretty in Pink Boutique Inc.

233.   In January 2024, the Pretty in Pink employee was instructed to deposit insurance checks to a new Pretty in Pink account at U.S. Bank account ending -5865.

234.   From January 19 to January 26, 2024, U.S. Bank account ending -5865 held in the name of Pretty in Pink Boutique Inc. received $254,001.10 in check deposits, which consisted of the PNC Bank cashier's check discussed above for $79,475.27 and $174,525.83 from various health insurance companies, including $101,366 from Anthem Blue Cross Blue Shield and a Blue Cross Blue Shield state subsidiary.

235.   On February 9, 2024, the Government seized the remaining balance in U.S. Bank account ending -5865 held in the name of Pretty in Pink Boutique Inc., consisting of approximately $254,001.10 in health care and wire fraud proceeds.

236.   The Government seeks forfeiture of the approximately $254,001.10 seized from U.S. Bank account ending -5865 held in the name of Pretty in Pink Boutique Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1956 and 18 U.S.C. § 1957.

### *Pretty In Pink: Citizens Bank account ending -1117*

237.   On October 26, 2023, Bank of Texas closed Pretty in Pink's account due to suspected fraudulent activity.

238.   The bank closed out the account using a Bank of Texas cashier's check in the amount of $94,047.41 for the balance of the account.

239.    As set forth above, the Bank of Texas account had consisted of funds from the health care fraud and wire fraud scheme.

240.    Shortly thereafter, a Pretty in Pink employee received the Bank of Texas cashier's check for $94,047.41 and was instructed to mail it overnight to 118 Graham Avenue, Brooklyn, New York 11206.

241.    On October 26, 2023, Tiku opened Citizens Bank account ending -1117 in the name of Pretty in Pink Boutique Inc. using the address: 118 Graham Ave, Brooklyn, New York 11206.

242.    After the closing of the Bank of Texas account and the opening of Citizens Bank account ending -1117 held in the name of Pretty in Pink Boutique Inc., a Pretty in Pink employee was instructed to mail insurance checks received at 2300 George Dieter, El Paso, Texas to 118 Graham Avenue, Brooklyn, New York 11206.

243.    On October 27, 2023, four health insurance checks, totaling $1,926.72, were deposited to the Citizens Bank account ending -1117 held in the name of Pretty in Pink Boutique Inc. via a Citizens Bank ATM in Brooklyn, New York.

244.    On November 3, 2023, the Bank of Texas cashier's check in the amount of $94,047.41, which had been endorsed with Tiku's signature, was deposited to the Citizens Bank account ending -1117 held in the name of Pretty in Pink Boutique Inc. at Citizens Bank's 5th Avenue branch in Brooklyn, New York.

245.    On April 16, 2024, the Government seized the remaining balance in Citizens Bank account ending -1117 held in the name of Pretty in Pink Boutique Inc., consisting of approximately $96,177.00 in health care and wire fraud proceeds.

246.  The Government seeks forfeiture of the approximately $96,177.00 seized from Citizens Bank account ending -1117 held in the name of Pretty in Pink Boutique Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1956 and 18 U.S.C. § 1957.

### *Pretty in Pink: Wells Fargo Bank account ending -2693*

247.  On December 1, 2023, Owner-2 opened Wells Fargo Bank account ending -2693 held in the name of Pretty in Pink Boutique Inc. as the sole signatory on the account.

248.  In December 2023, Wells Fargo Bank account ending -2693 held in the name of Pretty in Pink Boutique Inc. received health insurance payments from health care and wire fraud totaling $2,486,704.00 including a single check from BCBSIL dated December 12, 2023, for $2,140,074.86.

249.  Following these deposits, approximately 64.8 percent of the funds ($1,611,531.24) were quickly expended from the Wells Fargo Bank account ending -2693 held in the name of Pretty in Pink Boutique Inc. via checks and domestic wire transfers to investment and management companies with no apparent affiliation to the medical industry.

250.  On April 30, 2024, the Government seized the remaining balance in Wells Fargo Bank account ending -2693 held in the name of Pretty in Pink Boutique Inc., consisting of approximately $866,619.86 in health care and wire fraud proceeds.

251.  The Government seeks forfeiture of the approximately $866,619.86 seized from Wells Fargo Bank account ending -2693 held in the name of Pretty in Pink Boutique Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1957.

### *Pretty in Pink: Flushing Bank account ending -6844*

252.   Tiku opened Flushing Bank account ending -6844 held in the name of Pretty in Pink Boutique Inc. on or about November 10, 2023, as President and sole signatory, listing the business address as 53 Broad Street, Staten Island, NY 10304.

253.   Flushing Bank account ending -6844 held in the name of Pretty in Pink was funded by Citibank account ending -3888 held in the name of Royce, which was funded by TD Bank account ending -3617 held in the name of G&I Ortho (discussed above) and Citibank account ending -9165 held in the name of Neptune.

254.   Both Royce's Citibank account ending -3888 and Neptune's Citibank account ending -9165 were funded entirely by proceeds of the health care fraud and wire fraud scheme.

255.   From November 20 to November 24, 2023, Neptune's Citibank account ending -9165 transferred a total of $90,000.00 to Royce's Citibank account ending in -3888.

256.   From November 22 to November 24, 2023, Royce's Citibank account ending -3888 transferred a total of $55,000 to Flushing Bank account ending -6844 held in the name of Pretty in Pink, including in amounts exceeding $10,000.00.

257.   Flushing Bank account ending -6844 held in the name of Pretty in Pink, in turn, wired $17,865.33 to a company unrelated to DME or the medical supply industry.

258.   On June 11, 2024, the Government seized the remaining balance in Flushing Bank account ending -6844 held in the name of Pretty in Pink, consisting of approximately $37,424.67 in health care and wire fraud proceeds.

259.   The Government seeks forfeiture of the approximately $37,424.67 seized from Flushing Bank account ending -6844 held in the name of Pretty in Pink because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1956 and 18 U.S.C. § 1957.

### *Pretty In Pink: Regions Bank account ending -4282*

260.    On December 1, 2023, Owner-2 opened Regions Bank account ending -4282 held in the name of Pretty in Pink Boutique Inc. and was the sole signatory on the account.

261.    In December 2023, Regions Bank account ending -4282 held in the name of Pretty in Pink received health insurance payments totaling $199,668.61, including a single check from TRICARE dated September 15, 2023, for $176,231.69.

262.    On December 28, 2023, Regions Bank account ending -4282 held in the name of Pretty in Pink sent a $48,560.89 wire to COMPANY A.

263.    COMPANY A was purported to be a management company that was unrelated to DME or the medical supply industry.

264.    In January 2024, Regions Bank account ending -4282 held in the name of Pretty in Pink received health insurance payments totaling $223,004.62 from BCBSIL, with dates ranging from October 6, 2023, to November 6, 2023. These payments consisted of health care and wire fraud proceeds.

265.    There was no further activity in the account after these deposits.

266.    On June 11, 2024, the Government seized the remaining balance in Regions Bank account ending -4282 held in the name of Pretty in Pink Boutique Inc., consisting of approximately $373,618.31 in health care and wire fraud proceeds.

267.    The Government seeks forfeiture of the approximately $373,618.31 seized from Regions Bank account ending -4282 held in the name of Pretty in Pink Boutique Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1957.

### *Pretty In Pink: Citibank account ending -1638*

268. On June 22, 2023, Zogolev opened Citibank account ending -1638 held in the name of Pretty in Pink Boutique Inc. as the sole signatory on the account, listing the mailing address as 434 East 9 Street Apt 54, New York, New York, 10009.

269. On September 8, 2023, $38,324.04 in private health insurance checks stemming from fraudulent claims, including checks in amounts exceeding $10,000.00, were deposited into Citibank account ending -1638 held in the name of Pretty in Pink. Within a week, two of these checks, together worth $584.72, were returned by the payor as cancelled which caused Citibank to freeze the account.

270. There was no further activity in this account.

271. On August 14, 2024, the Government seized the remaining balance in Citibank account ending -1638 held in the name of Pretty in Pink Boutique Inc., consisting of approximately $37,185.70 in health care and wire fraud proceeds.

272. The Government seeks forfeiture of the approximately $37,185.70 seized from Citibank account ending -1638 held in the name of Pretty in Pink Boutique Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1957.

## ZOGOL MANAGEMENT INC.

### *Zogol Management Inc.: Citibank account ending -6431*

273. On June 12, 2023, Zogolev opened Citibank account ending -6431 in the name of Zogol Management Inc.

274. As discussed above, Zogolev had initially purchased Pretty in Pink and later transferred Pretty in Pink to Tiku.

275.    Citibank account ending -6431 held in the name of Zogol Management Inc. was funded by $156,113.14 in checks, including in amounts exceeding $10,000.00, from Medical Home Care's TD Bank account ending -6665, which, as set forth above, contained the proceeds of this health care fraud scheme.

276.    On August 14, 2024, the Government seized the remaining balance in Citibank account ending -6431 in the name of Zogol Management Inc., consisting of approximately $156,113.14 in health care and wire fraud proceeds.

277.    The Government seeks forfeiture of the approximately $156,113.14 seized from Citibank account ending -6431 in the name of Zogol Management Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1956 and 18 U.S.C. § 1957.

## **WHABA MEDICAL INC.**

278.    Whaba Medical Inc. ("Whaba") was formed on or about April 12, 1996, in Roselle, Illinois, and operated as a DME provider that was approved by Medicare to supply medically necessary DME to Medicare beneficiaries.

279.    In December 2023, Owner-2 purchased Whaba and filed an Interim Report of Changes with the Illinois Secretary of State to update Whaba's corporate records.

280.    From January 18, 2024, to March 8, 2024, Whaba submitted 1,630 claims via interstate wire to BCBSIL for over 3 million DME units for 1,158 beneficiaries for which BCBSIL paid Whaba $5.2 million.

281.    Whaba's claims for reimbursement submitted to Medicare and other entities via interstate wire during this time were false; Whaba did not provide DME to patients.

*Whaba Medical Inc.: Citibank account ending -7207*

282.    On December 29, 2023, Owner-2 became the sole signatory on Citibank account ending -7207 held in the name of Whaba Medical Inc.

283.    In the months before Owner-2 assumed control of the account, Citibank account ending -7207 held in the name of Whaba Medical Inc. averaged monthly income of $20,640.00 with a similar amount for average monthly expenditures, including payroll, loan payments, and medical expenses.

284.    In January 2024, Citibank account ending -7207 held in the name of Whaba Medical Inc. received health insurance payments consisting of fraud proceeds totaling $456,048.83.

285.    In February 2024, Citibank account ending -7207 held in the name of Whaba Medical Inc. received health insurance payments consisting of fraud proceeds totaling $5,548,470.93. These funds came from checks and electronic funds transfers from insurance companies, including a single check from BCBSIL dated January 30, 2024, for $3,861,517.63.

286.    Most funds in Citibank account ending -7207 held in the name of Whaba Medical Inc. were expended via international and domestic wire transfers to purported investment and management companies with no apparent affiliation to the medical industry.

287.    On April 30, 2024, the Government seized the remaining balance in Citibank account ending -7207 held in the name of Whaba Medical Inc., consisting of approximately $434,188.36 in health care and wire fraud proceeds.

288.    The Government seeks forfeiture of the approximately $434,188.36 seized from Citibank account ending -7207 held in the name of Whaba Medical Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1957.

## ARGO MEDICAL SUPPLIES AND SERVICES INC.

289.  Argo Medical Supplies and Services Inc. ("Argo") was formed on or about December 14, 2020, in Staten Island, New York, and operated as a DME provider which was approved by Medicare to supply medically necessary DME to Medicare beneficiaries.

290.  On or about August 30, 2023, Argo was sold to Tiku for approximately $460,000.00.

291.  On or around September 6, 2023, Tiku became the sole signatory on Argo's Chase Bank account.

292.  On October 11, 2023, a Biennial Statement Amendment to corporate records was filed with the State of New York Department of State and listed Tiku as President.

293.  Argo's claims for reimbursement submitted to Medicare and other entities via interstate wire during this time were false; Argo did not provide DME to patients.

294.  On or about November 3, 2023, Medicare began forwarding claims to supplemental plans as the secondary payors along with the claims' approval status. These entities, including TRICARE, paid Argo at least $9 million in reimbursements for DME claims.

295.  Historically, Argo did not bill any claims to TRICARE. Argo began billing TRICARE on or about November 3, 2023, after the sale to Tiku.

296.  From November 3, 2023, to January 25, 2024, Argo submitted 2,685 claims to TRICARE via interstate wire involving 2,647 TRICARE beneficiaries for 4.8 million units of DME for which TRICARE paid Argo $7,051,294.79.

297.  From November 3, 2023, to January 29, 2024, Argo submitted 238 claims to Highmark via interstate wire for 453,425 DME units for which Highmark paid Argo $603,305.63 of the $4.1 million billed by Argo.

298.   From December 15, 2023, to February 27, 2024, Argo billed for more than one million units of DME, for which BCBSIL paid $1.9 million. BCBSIL paid Argo $1,318,171.61 before it initiated an investigation.

*Argo Medical Supplies and Services Inc.: Santander Bank account ending -5819*

299.   On October 23, 2023, Tiku opened Santander Bank account ending -5819 held in the name of Argo Medical Supplies & Services Inc. as president and sole signatory.

300.   In December 2023, Santander Bank account ending -5819 held in the name of Argo received deposits of health insurance checks totaling $31,039.52, at least one of which was more than $10,000.00.

301.   In January 2024, Santander Bank account ending -5819 held in the name of Argo received deposits of health insurance checks totaling $6,756,946.88, at least one of which was more than $10,000.00.

302.   Most of these deposits were subsequently liquidated from Santander Bank account ending -5819 held in the name of Argo via checks and/or wire transfers to investment and management companies with no apparent affiliation to the medical industry. Funds from Santander Bank account ending -5819 held in the name of Argo were also sent to other DME companies identified as participating in the same or similar Medicare fraud scheme.

303.   On May 10, 2024, the Government seized the remaining balance in Santander Bank account ending -5819 held in the name of Argo Medical Supplies & Services Inc., consisting of approximately $1,742,843.78 in health care and wire fraud proceeds.

304.   The Government seeks forfeiture of the approximately $1,742,843.78 seized from Santander Bank account ending -5819 held in the name of Argo Medical Supplies &

Services Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1957.

***Argo Medical Supplies and Services Inc.: Bank of America account ending -9152***

305.    Tiku opened Bank of America account ending -9152 in the name of Argo Medical Supplies & Services Inc. on or about September 28, 2023.

306.    From October 3, 2023 through November 14, 2023, Bank of America account ending -9152 held in the name of Argo. received deposits totaling $49,875.65 consisting of laundered proceeds from one of My Sleep Apnea's bank accounts and another one of Argo's bank accounts.

307.    In November 2023, the Bank of America account ending -9152 held in the name of Argo received deposits of health insurance checks consisting of health care and wire fraud proceeds totaling $924,563.49, at least one of which had a value greater than $10,000.

308.    In December 2023, the Bank of America account ending -9152 held in the name of Argo received deposits of health insurance checks consisting of health care and wire fraud proceeds totaling $649,891.37, at least one of which had a value greater than $10,000.00.

309.    In January 2024, the Bank of America account ending -9152 held in the name of Argo received deposits of health insurance checks consisting of health care and wire fraud proceeds totaling $2,921,099.82, at least one of which had a value greater than $10,000.00.

310.    In February 2024, the Bank of America account ending -9152 held in the name of Argo received health insurance checks consisting of health care and wire fraud proceeds totaling $2,487,065.26, at least one of which had a value greater than $10,000.00.

311.    Most of these deposits were subsequently liquidated from the Bank of America account ending -9152 held in the name of Argo via checks and/or wire transfers to investment and management companies with no apparent affiliation to the medical industry.

312.    On May 10, 2024, the Government seized the remaining balance in Bank of America account ending -9152 held in the name of Argo Medical Supplies & Services Inc., consisting of approximately $984,283.83 in health care and wire fraud proceeds.

313.    The Government seeks forfeiture of the approximately $984,283.83 seized from Bank of America account ending -9152 held in the name of Argo Medical Supplies & Services Inc. because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1956 and 18 U.S.C. § 1957.

## M31 CAPITAL MANAGEMENT LLC

### M31 Capital Management LLC: Customers Bank account ending -6178

314.    M31 Capital Management LLC ("M31") was a Connecticut limited liability company.

315.    M31 maintained the Customers Bank account ending -6178 held in the name of M31 Capital Management LLC.

316.    Between approximately November 9, 2023, and February 24, 2024, which was when the health care fraud scheme was ongoing, Customers Bank account ending -6178 held in the name of M31 Capital Management LLC received approximately 46 deposits, including deposits in amounts exceeding $10,000.00, from companies associated with the scheme described herein.

317.    DME companies transferred cumulative health care and wire fraud proceeds into Customers Bank account ending -6178 held in the name of M31 Capital Management LLC as follows:

    a.   Argo Medical Supplies and Services Inc.: $2,437,806.95

    b.   G&I Ortho Supply Inc.: $1,236,586.78

    c.   Medical Home Health Care Inc.: $291,377.52

    d.   My Sleep Apnea LLC: $480,621.67

    e.   Neptune Medical and Surgical Supply, Inc.: $222,057.80

    f.   Pretty in Pink Boutique Inc.: $1,020,366.11

    g.   Royce Medical Supply LLC: $606,705.98

    h.   Whaba Medical Inc.: $912,544.00

318. On April 17, 2024, the Government seized the remaining balance in Customers Bank account ending -6178 held in the name of M31 Capital Management LLC, consisting of approximately $87,194.29 in health care and wire fraud proceeds.

319. The Government seeks forfeiture of the approximately $87,194.29 seized from Customers Bank account ending -6178 held in the name of M31 Capital Management LLC because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1956 and 18 U.S.C. § 1957.

## MARAT DIAGNOSTIC SERVICES CORP

320. A nominee owner ("Owner-3"), who resided in the United States during the relevant time period, formed Marat Diagnostic Services Corp. ("Marat Diagnostic") on or about December 8, 2023.

321. On or about January 1, 2024, Marat Diagnostic began submitting fraudulent bills to private insurance companies for DME reimbursement through their Medicare Advantage Plans, or "Part C" plans.

322.    From January 2024 to June 2024, Chase Bank account ending in -0166 held in the name of Marat Diagnostic received multiple large checks from Argo and Express consisting of fraud proceeds.

*Marat Diagnostic Services Corp: Chase Bank account ending -0166*

323.    On or about January 22, 2024, Owner-3 opened Chase Bank account ending -0166 in the name of Marat Diagnostic Services Corp as the sole signatory.

324.    This account was funded almost exclusively with deposits from Zelis and with checks from other DME entities involved in the scheme.

325.    Chase Bank account ending -0166 held in the name of Marat Diagnostic received $450,000.00 in fraudulent Medicare proceeds from Argo between January 26, 2024, and February 2, 2024.

326.    From May 2024 to June 2024, Chase Bank account ending -0166 held in the name of Marat Diagnostic received multiple deposits of fraud proceeds from Express, each exceeding $10,000.00, totaling $1,139,505.00.

327.    Some providers use an electronic payment vendor, Zelis Claims Integrity LLC ("Zelis"), which facilitates insurance payments from payors to providers through automated clearinghouse (ACH) payments.

328.    On January 22, 2024, Owner-3 signed an agreement with Zelis on behalf of Marat Diagnostic as the provider. At different times, the insurance payments facilitated through Zelis were deposited into Chase Bank account ending in -0166 held in the name of Marat Diagnostic.

329.    On April 25, 2024, Zelis made three payments totaling $20,533.06 to Chase Bank account ending -0166 held in the name of Marat Diagnostic based on fraudulent Medicare claims.

330.   On April 4, 2025, the Government seized the remaining balance in Chase Bank account ending -0166 held in the name of Marat Diagnostic, consisting of approximately $582,485.40 in health care and wire fraud proceeds.

331.   The Government seeks forfeiture of the approximately $582,485.40 seized from Chase Bank account ending -0166 held in the name of Marat Diagnostic because they constitute proceeds of violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1347 and were involved in violations of 18 U.S.C. § 1956 and 18 U.S.C. § 1957.

## CLAIM FOR RELIEF

332.    Paragraphs 1 to 331 are incorporated by reference.

333.    The Defendant Assets are forfeitable pursuant to 18 U.S.C. §§ 981(a)(1)(A) and

981(a)(1)(C) because they constitute or are derived from proceeds of wire fraud affecting

a health care benefit program in violation of 18 U.S.C. § 1343; constitute or are derived

from proceeds of health care fraud in violation of 18 U.S.C. § 1347; and are property

involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 or

1957 or are traceable to such property.

Wherefore, the United States of America prays that a Warrant of Arrest In Rem be issued

for the Defendant Assets; that due notice be given to all known parties known or thought to have

an interest in or right against the Defendant Assets to appear and show cause why the forfeiture

should not be decreed; that judgment be entered declaring the property to be condemned and

forfeited to the United States of America for disposition according to law; and that the United

States of America be granted such other relief as this Court may deem just and proper, together

with the costs and disbursements of this action.

The United States of America requests trial by jury.

DAVID X. SULLIVAN                           MARGARET A. MOESER
UNITED STATES ATTORNEY                      CHIEF, MONEY LAUNDERING AND
                                            ASSET RECOVERY SECTION


/S/ David C. Nelson                         /s/ Emily Cohen
David C. Nelson (ct25640)                   Emily Cohen
Assistant U.S. Attorney                     Chelsea R. Rooney
157 Church Street, 25th Floor               Trial Attorneys
New Haven, Connecticut 06510                Criminal Division
Tel:    (203) 821-3700                      1400 New York Ave NW
Fax:    (203) 773-5373                      Washington, DC 20005
David.C.Nelson@usdoj.gov                    Tel:    (202) 616-2471
                                            Emily.cohen@usdoj.gov

## VERIFICATION

I am a Special Agent with the Department of Health and Human Services, and the individual assigned the responsibility for this case.

I have read the contents of the foregoing Verified Complaint of Forfeiture, and the statements contained therein are true to the best of my knowledge and belief.

I verify and declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th day of June, 2025.

/S/ Jeffery Anderson
JEFFREY ANDERSON
SPECIAL AGENT, HHS